Martin F. Casey
**CASEY & BARNETT, LLC**
305 Broadway, Ste 1202
New York, New York 10007
(212) 286-0225
mfc@caseybarnett.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NETWORK SHIPPING, LTD.

      Plaintiff,

   - against –

M/V BOMAR JULIANA, her engines, tackle, boilers,
etc. *in rem*; BOREALIS MARITIME LIMITED; and
BOMAR C LLC, *in personam*.

      Defendants.
------------------------------------------------------------X

18 Civ.

**COMPLAINT**

      Plaintiff, NETWORK SHIPPING LTD., by and through its attorneys, Casey & Barnett LLC, as and for its Complaint, alleges upon information and belief as follows:

### JURISDICTION

      1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. §1333.

      2.    The contract between the parties, a charter party dated February 8, 2017, provides for the resolution of all disputes that arise under the charter party in the United States District Court for the Southern District of New York.

### PARTIES

      3.    At all material times, NETWORK SHIPPING LTD. (hereinafter "Network" or "Plaintiff") was and is a corporation with an office and place of business located at 241 Sevilla

Avenue, Coral Gables, Florida 33134, and was the time charterer of the M/V BOMAR JULIANA.

4.  At all material times, defendant M/V BOMAR JULIANA (hereinafter "the vessel"), IMO number 9275036, is an ocean-going container ship owned and operated by defendants, as more specifically described below and was the vessel that was the subject of the charter party between plaintiff and defendants.

5.  At all material times, defendant BOMAR C LLC (hereinafter "Bomar" or "Defendant") was and is a corporation with an office and place of business located at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands MH96960, was and is the registered owner and/or operator of the M/V BOMAR JULIANA and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

6.  At all material times, defendant BOREALIS MARITIME LIMITED (hereinafter "Borealis" or "Defendant") was and is a corporation with an office and place of business located at 139 Piccadilly, London, United Kingdom W1J 7NU, was and is the beneficial owner and/or operator and/or manager of the M/V BOMAR JULIANA and at all relevant times, was and is still doing business within the jurisdiction of this Honorable Court.

7.  Plaintiff brings this action on its own behalf and as agent and/or trustee on behalf of and for the interest of all parties who may be or become interested in the said consignments, as their respective interests may ultimately appear, and plaintiff is entitled to maintain this action.

## RELEVANT FACTS

8.  In February 2017 Network, as charterer, and Bomar, as owner, entered into a Baltime 1939 form time charter party (hereinafter "charter party") for the use of the M/V BOMAR JULIANA for a period of 12 to 15 months commencing in March 2017.

9.  The vessel was returned, or redelivered, to Bomar in June 2018, as per the terms of charter party.

10. Network utilized the vessel on a service between Central America and Gloucester, New Jersey during the period of time the vessel was employed by Network, with each round trip taking approximately two weeks.

## Claim 1

11. The port of Gloucester, New Jersey requires that labor, i.e. longshoremen, be ordered no later than 1400 hours of the prior day in order to be available to work a particular vessel.

12. At or about 0200 hours on January 7, 2018, while approaching the pilot station at the entrance to Delaware Bay, and enroute to Gloucester, New Jersey, the vessel encountered main engine propulsion problems. The vessel was forced to anchor outside the pilot station as she was unable to navigate Delaware Bay toward Gloucester due to the issues she was experiencing with her main engine.

13. The vessel did not arrive at the marine terminal in Gloucester, New Jersey on January 7, 2018.

14. Network, expecting the vessel to arrive at the marine terminal in Gloucester on the morning of January 7, 2018, had ordered labor to work the vessel on January 6, 2018 prior to 1400, as required by the port.

15. Network was billed 16 hours for the labor gangs that arrived to work the vessel between 1200 hours and 2200 hours on January 7, 2018 in the amount of $20,245.47.

16. Network was billed 128 man hours for labor gangs that arrived to work the warehouse between 1200 -1600 and 1800-2200 on January 7, 2018 in the amount of $8,959.65.

17. As of 1400 hours on January 7, 2018, Network had received no definitive information from Bomar as to the length of time repairs would take for the vessel and Bomar did not inform Network that the vessel would not arrive at the marine terminal on January 8, 2018 prepared to discharge her cargo.

18. Inasmuch as Network had not been informed by Bomar that the vessel would not arrive at the marine terminal in Gloucester, New Jersey on January 8, at 1400 hours on January 7, 2018 Network ordered labor to work the vessel on January 8, 2018.

19. The vessel did not arrive at the marine terminal in Gloucester on January 8, 2018.

20. Network was billed 16 hours for the labor gangs that arrived to work the vessel between 0700 - 1100 hours and from 1800 - 2200 hours on January 8, 2018 in the amount of $20,245.47.

21. Network was billed 128 man hours for labor gangs that arrived to work the warehouse between 0700 -1100 and 1800-2200 on January 8, 2018 in the amount of $8,959.65.

22. During the course of the day on January 8, 2018 Network made various inquires to Bomar as to whether the vessel would arrive at the berth in Gloucester prepared to discharge her cargo on January 9, 2018. Bomar refused to provide any definitive instructions or advices to Network. They advised only that once the US Coast Guard permitted the transit the vessel would move.

23. Inasmuch as Bomar did not advise Network that the vessel would not arrive at the berth in Gloucester on January 9, 2018, at or about 1400 hours on January 8, 2018 Network ordered labor to work the vessel on January 9, 2018.

24. On January 8, 2018 at approximately 2130 hours, the US Coast Guard authorized the vessel to proceed up river to Gloucester. The US Coast Guard limited transit to daylight hours only.

25. The vessel did not arrive at the marine terminal in Gloucester on January 9, 2018 in sufficient time to perform cargo operations.

26. Network was billed 19 hours for the labor gangs that arrived to work the vessel between 0700 - 1200 hours and 1300 - 1730 hours on January 9, 2018 in the amount of $24,041.50.

27. Network was billed 152 man hours for labor gangs that arrived to work the warehouse between 0700 -1200 and 1300-1730 on January 9, 2018 in the amount of $10,639.58.

28. Due to the vessel's delayed arrival, Network was charged additional fees and expenses by the Port, including (a) 1 day lay-up status totaling $1,230; (b) warehouse labor overtime differential, totaling $5,385.35; and (c) longshoreman gang stand-by differential, totaling $12,114.99.

29. Network incurred charges in the total amount of $111,821.66 due to the vessel's failure to arrive at the designated berth at the appointed time.

30. The expenses set forth above were incurred by Network solely due to the unseaworthy condition of the M/V BOMAR JULIANA and the failure of Bomar to keep Network fully informed in a timely manner of the vessel's condition.

31. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $111,821.66.

32. The Contract provides for an assessment of 4% interest on the claim running from the date of first occurrence, or in this case, January 7, 2018.

## Claim 2

33. Clauses 41 and 69 of the Charter Party entitles Bomar to seek reimbursement for taxes it pays to the United States Treasury in respect to earnings of the Vessel whilst operating under the Charter Party. During the final Hire reconciliation, Bomar improperly deducted the sum of $34,000 from moneys properly due and owing to Network, alleging that it anticipates having to pay this sum in taxes to the United States Treasury when it files in 2018 tax return.

34. The alleged 2018 tax has not yet been incurred by Bomar.

35. Bomar has not paid the purported 2018 tax to the United States Treasury.

36. The deduction made by Bomar for the purported 2018 tax was improper and said funds rightfully belong to Network.

37. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be $34,000.

38. The Contract provides for an assessment of 4% interest on the claim running from the date of first occurrence, or in this case, June 29, 2018.

## AS AND FOR A FIRST CAUSE OF ACTION

39. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, as if herein set forth at length.

40. As a direct and proximate result of said breach of contract by Defendant, the Plaintiff has suffered damages presently estimated to be no less than $145,821.66.

41. By reason of the foregoing, plaintiff has sustained losses which will be shown with specificity at trial, no part of which has been paid, although duly demanded, which are presently estimated to be no less than $145,821.66.

**WHEREFORE,** Plaintiff prays:

1. That process in due form of law may issue against Defendant citing it to appear and answer all and singular the matters aforesaid;

2. That judgment may be entered in favor of Plaintiff against Defendant for the amount of Plaintiff's damages in the amount of at least $145,821.66, plus interest running at 4%, costs and the disbursements of this action; and

3. That this Court grant to Plaintiff such other and further relief as may be just and proper.

Dated: New York, New York
July 30, 2018
182-141

                                              **CASEY & BARNETT, LLC**
                                              Attorneys for Plaintiff

By: _/s/ Martin F. Casey_
                                              Martin F. Casey
                                              305 Broadway, Ste 1202
                                              New York, New York 10007
                                              (212) 286-0225